IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DARREN L. WILLIAMS,

        Plaintiff,

v.                                                    Case No. 20-3277-JWB

JEFF ZMUDA,
*Secretary, Kansas Department of Corrections*;
DOUGLAS W. BURRIS, *Facility Manager,*
*Kansas Department of Corrections*,

        Defendants.

**MEMORANDUM AND ORDER**

This matter is before the court on Defendants' motion to dismiss or in the alternative for summary judgment (Doc. 35) and Plaintiff's motion for order (Doc. 48). The motions have been briefed and are ripe for decision. (Docs. 36, 45, 48, 49, 53, 56, 52.) For the reasons stated herein, Plaintiff's motion for order (Doc. 48) and Defendants' motion to dismiss or for summary judgment (Doc. 35) are both GRANTED.

**I. Background**

Plaintiff is in the custody of the Kansas Department of Corrections (KDOC) serving a sentence for rape and aggravated indecent liberties with a child. His complaint alleges Defendants are depriving him of federal constitutional rights under color of state law by denying his request to have video visitations with adults on Plaintiff's list of approved adult visitors. Plaintiff's first claim asserts that the denial is not related to any legitimate penological interest and is therefore unconstitutional under *Turner v. Safley*, 482 U.S. 78 (1987). His second claim is that the denial violates his right to equal protection of the laws. (Doc. 4.) Defendants move to dismiss the claims,

or alternatively for summary judgment, contending the decision was related to legitimate penological interests and that Plaintiff has failed to make a showing of a denial of equal protection. (Doc. 36.)

## II. Plaintiff's Motion for Order (Doc. 48).

Plaintiff seeks an order allowing him to supplement his response to Defendants' motion. Plaintiff asks the court to consider evidence of written statements by three individuals as part of his response. (Doc. 48-1.) Plaintiff's request to supplement his response with these statements is GRANTED.

## III. Treatment of motion

Defendants' motion cites various exhibits outside of the pleadings and includes a request that the motion be treated as one for summary judgment. (Doc. 36 at 1, 23.) Plaintiff likewise refers to and cites exhibits attached to or submitted in connection with his response to the motion. (Docs. 45-1, 48.) When such matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56, and all parties must be given a reasonable opportunity to present all the material that is pertinent to the motion. Fed. R. Civ. P. 12(d).

Both parties have treated the motion as one for summary judgment with respect to Plaintiff's first claim, and the court concludes the parties have had a reasonable opportunity to present all pertinent materials as it relates to Plaintiff's first claim.[1] The court accordingly treats

---

[1] Plaintiff complains he has not had access to sealed Exhibit 24 (Doc. 10) and has not been able to conduct discovery. The court granted Defendants' motion to seal Exhibit 24 because it contains explicit descriptions of Plaintiff's acts and admissions involving sexual abuse of minors and Defendants have represented that it would violate prison disciplinary rules for Plaintiff to possess it. (*See* Docs. 7 at 2; 8.) Nevertheless, Plaintiff has not shown by affidavit or declaration that he cannot present facts essential to his opposition to Defendants' motion. *See* Fed. R. Civ. P. 56(d). Specifically, Plaintiff has not shown that he does not possess facts to adequately respond to the affidavit of Mary McDonald, *infra*, stating the factual basis for denial of Plaintiff's request for video visitations and the question of whether there is a penological justification for the restriction.

2

the motion as one for summary judgment under Rule 56 and considers the submitted exhibits with respect to Plaintiff's first claim.  *See Fulbright v. Water Sys. Eng'g, Inc.*, No. 21-2191-DDC-TJJ, 2021 WL 5161756, at *2 (D. Kan. Nov. 5, 2021) (citing *Jones v. Midland Funding*, 656 F. App'x 913, 915 (10th Cir. 2016) (affirming trial court's conversion of motion to dismiss into one for summary judgment because the non-moving plaintiff "himself filed materials outside the pleadings in response to the motion to dismiss and therefore cannot now claim conversion was unfair or a surprise"); *Arnold v. Air Midwest, Inc.*, 100 F.3d 857, 859 n.2 (10th Cir. 1996) ("Because [the non-movant] submitted material beyond the pleadings in opposition to defendants' motion, he is scarcely in a position to claim unfair surprise or inequity.")

With respect to Plaintiff's second claim, for violation of his right to equal protection of the laws, the court concludes that Plaintiff's allegations are conclusory and fail to state a claim upon which relief can be granted, such that it is subject to dismissal under Fed. R. Civ. P. 12(b)(6).

**IV. Uncontroverted facts**

Plaintiff is in the custody of the Kansas Department of Corrections (KDOC) serving a sentence for convictions on three counts of aggravated indecent liberties with a child over 14 but younger than 16 years of age and one count of rape.  He entered KDOC custody on December 14, 2017.  (Doc. 36 at 3.)  He is currently housed at the Hutchinson Correctional Facility (HCF).

Plaintiff is managed as a sex offender pursuant to KDOC's Internal Management Policies and Procedures (IMPP).  Under IMPP 11-115A pertaining to KDOC's "Sex Offender Program, Management and Supervision," sex offenders in KDOC custody "must be identified, treated, managed and supervised in accordance with … this policy," and they "must be assessed for risk/need related to sex offending and receive programming during incarceration … based on assessed risk/need."  (Doc. 9-15) (IMPP 11-115A, Policy (effective 11-30-2020)).  The policy

3

states in part that an "Override Panel" can "override a resident out of being managed as a sex offender." *Id.*, Definitions.

A provision in IMPP 11-115A governing inmate visits and other contacts provides in part that a sex offender whose victims were over 18 years of age "is to be permitted contact visits, video visits, telephone contact, photos and email contact with immediate family without going through the override process." IMPP 11-115A, Sec. II(C)(1) (effective 11-30-2020). A sex offender with a minor victim "may be approved for contact with a minor immediate family member who is not the sex offender's victim, only after further review," which may be requested through an override request. (*Id.*) The policy contains a section entitled "No Contact with Victims or Victims' Families," which prohibits (with certain exceptions) a sex offender from having contact with his victims, and further provides that "[c]onsideration for contact with [a] victim or victim's family must not occur unless" certain conditions are met, including that Victim Services approves the visit, in which case the facility "may allow the visit." The policy defines the "victim's family" to include grandparents. (*Id.*)

A portion of IMPP 11-115A dealing with "Sex Offender Overrides" establishes a Sex Offender Panel consisting of at least four members, including the Director of Reentry, and adopts procedures for consideration of override requests "to modify the method of management as a sex offender…." *Id.*, Sec. (VI)(B). The modifications identified in the provision include, but are not limited to, approval for a contact or video visit with a non-victim minor family member. *Id*. An override request requires completion of a particular form, review by the Override Panel, and a vote by the Override Panel, with the decision of the panel being "final and not subject to appeal or review." (*Id.*) The Director of Reentry is tasked with gathering any information needed for the panel to consider the request and placing the request before the panel.

Plaintiff's approved visitor list includes an adult friend, Plaintiff's aunt, Plaintiff's cousin, Plaintiff's father, Plaintiff's mother, and Plaintiff's grandmother. (Doc. 9-6.) On June 19, 2020, Plaintiff requested a sex offender override regarding video visits with the adult contacts on his visiting list. According to the declaration of Mary McDonald, the KDOC Director of Reentry, Plaintiff's override request was one of the first requests regarding video visitations received by the Override Panel – the video visitation technology being relatively new to KDOC and having been expanded due to COVID – and it created a need to review visitation policies.[2]

McDonald's understanding was that IMPP 11-115A was adopted to establish uniform guidelines for management of sex offenders and to facilitate visitation for continued positive social and familial relationships during incarceration, subject to security and safety needs of victims, the public, and the institution, and also subject to the rehabilitation needs of the offender. According to McDonald, the Override Panel determined that inmates managed as sex offenders must obtain an override prior to having access to video visitation. (Doc. 36 at 26.) The justification for the determination was the KDOC's interest in protecting children. (*Id.*) McDonald said a case-by-case analysis was required to determine if video visitation could be safely conducted with consideration given to the nature of each offender's criminal history, diagnosis, and rehabilitation prognosis. (*Id.*)

According to McDonald, absent the prohibition on video visitation for sex offenders with minor victims, correctional staff would be significantly burdened in attempting to manage the visitations. She states that "[g]iven the uncontrollable environment that video visitations present, there is no way to ensure an inmate with [Plaintiff's] circumstances is not engaging in or exposed

---

[2] The complaint alleges that in March 2020, the KDOC announced "that video visits were now operational and available for use to all inmates except sex offenders." (Doc. 4 at 8-9.)

to harmful contact unless a staff member is standing there watching each minute of the sex offender's visit." (*Id.* at 27.)

McDonald states that Plaintiff's request for override was considered by the panel and was denied for several reasons. One reason was that clinical reports indicated a high risk of recidivism. McDonald noted that Plaintiff's diagnosis was paraphilia NOS [Not Otherwise Specified] with hebephiliac features. His victims included both familial minors and acquaintance minors. The incidents of sexual victimization spanned a period of years. McDonald states that the panel also determined the request should be denied "because many of the contacts on his visitor[s'] list meet the definition of 'Victim's Family' pursuant to K.S.A. 74-7335,"[3] and "[t]here is no way to effectively allow certain types of contact with some visitors on [Plaintiff's] contact list and not others." (*Id.*) McDonald said the panel "determined that because of the uncontrolled environment of video visitations, they were inappropriate in [Plaintiff's] case given his diagnosis and due to the potential for the victimization of children." (*Id.*) She states that Plaintiff's offenses "included elements of manipulation that spanned over a period of years," which "makes the uncontrolled nature of video visitation a concern." (*Id.* at 28.) McDonald states that the panel also considered the impact of any intentional or inadvertent interaction with children on Plaintiff's rehabilitation and determined that helping him avoid any interaction with children would promote his rehabilitation. (*Id.*)

The details of Plaintiff's offenses are set forth in a sealed exhibit (Doc. 10) attached to the *Martinez* report[4] filed in this case. (Doc. 9.) The factual assertions by McDonald noted above,

---

[3] This provision, which pertains to the right of crime victims and their families to be notified of public hearings, defines "victim's family" to mean "a spouse, surviving spouse, children, parents, legal guardian, siblings, stepparent or grandparents." K.S.A. 74-7335(c)(2). The same definition is incorporated in IMPP 11-115A. (Doc. 9-15 at 2.)
[4] *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978) (approving practice of ordering preparation of prison administrator's incident report).

including Plaintiff's diagnosis, risk of recidivism, history of abuse of both familial and non-familial minors, manipulative acts, and sexual abuse occurring over a period of years, all find support in the investigative and court documents in Doc. 10.  Plaintiff pleaded no contest to three counts of aggravated indecent liberties with a child (between ages 14 and 16) and one count of rape, and was sentenced to a term of 267 months imprisonment followed by lifetime post-release supervision.  (Doc. 10 at 8, 11.)

McDonald states that Plaintiff was not the only sex offender denied approval for video visitations.  She states that at least nine other sex offenders were denied video visitation based upon their individual circumstances.  (Doc. 36 at 27.)

Neither Zmuda nor Burris were involved in the decision to deny the override.  (*Id.* at 4.)  Burris is no longer employed as a Corrections Manager with KDOC.  (*Id.* at 5.)

Plaintiff had in-person visits with his parents on April 7-8, 2018, on March 2-3, 2019, on October 5-6, 2019, and on December 28-29, 2019.  His grandmother was also present for the March 2-3, 2019, visit.  In-person visitation resumed on or about April 18, 2021, after a period of suspension due to COVID.  (*Id.*)

Over the past eight months, Plaintiff has had an average of over one telephone call per day, most of which were at least fifteen minutes long and up to 56 minutes long.  (*Id.*)  Between October 2020 and March 2021, Plaintiff sent 85 emails to approved contacts.  He received 78 responses.  (*Id.*)  Plaintiff purchased 204 first-class stamps during his incarceration.  (*Id.*)

Plaintiff joined the U.S. Army in 1998.  He got married in 1999.  By 2007, Plaintiff and his wife had three children.  He was deployed to Iraq in 2007 and again in 2010.  He left the army with an honorable discharge in 2014 and relocated to Arkansas City, Kansas, where he took a job

as a procurement specialist with an aerospace company and joined the Army Reserves.  (Doc. 45 at 2-4.)

The KDOC override application form, which Plaintiff completed as part of his request for an override, asks among other things whether the applicant has completed the Sex Offender Treatment Program (SOTP) and whether it was successful.  (Doc. 45-1 at 3; Doc. 9-17 at 5.)  The form also indicates the applicant should check one of five boxes identifying the type of requested modification, but there is no box for seeking video visitations with adults on an approved contact list.  There is a box for requests to have "[o]ther contact with minors (facility) (mail, including mail photos of minor, email, phone contact.)" (*Id.*)  A version of IMPP 11-115A that was in effect in 2015 provided that sex offenders with minor victims could not request an override for contact with a minor until the offender has successfully completed the SOTP.  (Doc. 9-13 at 5.)  That requirement was removed from the policy in 2016.  (Doc. 9-14 at 5-6.)

Plaintiff's override request pointed out he was seeking video visitation with adults on his contact list, not with minors, and asserted "there is nearly no chance of anyone under the age of 18 being anywhere in the vicinity during a video visit session between my approved visitors and I, and there would be no communication, in any form, with them in the unlikely event that they are nearby." (Doc. 9-17 at 7.)

Plaintiff seeks to have video visitation with his mother, father, aunt, cousin, and grandmother, as well as a friend, all of whom are on his approved contact list, and all of whom are Plaintiff's age or older.

**V. Standards**

A. <u>Summary Judgment</u>. Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact, and the movant is entitled to

8

judgment as a matter of law. Fed. R. Civ. P. 56(a). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247– 48 (1986) (emphases in original). "A fact is material if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is genuine if a rational jury could find in favor of the nonmoving party on the evidence presented." *Doe v. Univ. of Denver*, 952 F.3d 1182, 1189 (10th Cir. 2020) (quotation marks omitted).

The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim. *Thom v. Bristol—Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). If the moving party meets its burden, the nonmoving party "must do more than refer to allegations of counsel contained in a brief to withstand summary judgment. Rather, sufficient evidence (pertinent to the material issue) must be identified by reference to an affidavit, a deposition transcript or a specific exhibit incorporated therein." *Adams v. Am. Guarantee & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000) (citation and quotation marks omitted). Conclusory allegations are not sufficient to create a dispute as to an issue of material fact. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The court views the evidence and all reasonable inferences therefore in the light most favorable to the nonmoving party. *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

B. Rule 12(b)(6). In order to withstand a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must contain enough allegations of fact to state a claim to relief that is plausible on its face. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). All well-pleaded facts and the reasonable inferences derived from those facts are viewed in the light most favorable to Plaintiff. *Archuleta*

9

*v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008). Conclusory allegations, however, have no bearing upon the court's consideration. *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007).

### VI. Analysis

#### A. *Turner v. Safely* Test

Judge Crow previously summarized the applicable law in this case:

The Constitution "allows prison officials to impose reasonable restrictions upon visitation." *Wirsching v. Colorado*, 360 F.3d 1191, 1198 (10th Cir. 2004) (citation omitted). In assessing a visitation restriction, the courts apply the standard set forth in *Turner v. Safley*, 482 U.S. 78, 89 (1987): "a prison regulation imping[ing] on inmates' constitutional rights ... is valid if it is reasonably related to legitimate penological interests." *Id*. "That deferential review follows from the principle that '[s]ubjecting the day-to-day judgments of prison officials to an inflexible strict scrutiny analysis would seriously hamper their ability to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration.'" *Id*.at 1198–99.

Thus, the Court must "balance the guarantees of the Constitution with the legitimate concerns of prison administrators," *Beerheide v. Suthers*, 286 F.3d 1179, 1185 (10th Cir. 2002), asking:

(1) whether a rational connection exists between the prison policy regulation and a legitimate governmental interest advanced as its justification; (2) whether alternative means of exercising the right are available notwithstanding the policy or regulation; (3) what effect accommodating the exercise of the right would have on guards, other prisoners, and prison resources generally; and (4) whether ready, easy-to-implement alternatives exist that would accommodate the prisoner's rights.

*Williams v. Zmuda*, No. 20-3277-SAC, 2021 WL 916644, at *2–3 (D. Kan. Mar. 10, 2021) (citing *Beerheide*, 286 at 1199) (citing *Turner*, 482 U.S. at 89-91).

#### B. Application of *Turner*

Defendants' policy resulting in denial of Plaintiff's request for video visitations restricts Plaintiff's ability to communicate or associate with persons on his contact list. The right to communicate or associate with family members and others is generally protected against government infringement by the First and/or Fourteenth Amendments. *See e.g., Heyer v. United*

*States Bureau of Prisons*, 849 F.3d 202, 213 (4th Cir. 2017) ("Courts have generally concluded that the First Amendment rights retained by convicted prisoners include the right to communicate with others beyond the prison walls.")  *Turner* requires the court to balance such constitutional rights against the legitimate concerns of prison administrators.  482 U.S. at 95.  Under *Turner*, "restrictive prison regulations are permissible if they are reasonably related to legitimate penological interests, and are not an exaggerated response to such objectives."  *Tenison v. Byrd*, 826 F. App'x 682, 691 (10th Cir. 2020) (quoting *Beard v. Banks,* 548 U.S. 521, 528 (2006)).

      1. <u>Whether a rational connection exists between the prison policy or regulation and a legitimate governmental interest advanced as its justification</u>.  Defendants assert that denial of video visitation for Plaintiff and other sex offenders with convictions involving minors furthers the state's interest in protecting children.  Protecting minors from sexual abuse or exploitation and related harm is undoubtedly a legitimate state interest.  *Cf. Packingham v. North Carolina*, 137 S. Ct. 1730, 1736 (2017) ("[I]t is clear that a legislature may pass valid laws to protect children and other victims of sexual assault from abuse.") (internal quotation marks and citation omitted).  The prohibition at issue here rationally furthers that interest by eliminating the possibility of Plaintiff or other inmates with a history of abusing minors from having unsupervised video contact with minors, whether that contact be inadvertent or purposeful.  As McDonald's affidavit points out, given the uncontrolled environment of a video visitation, "there is no way to ensure an inmate with Williams' circumstances is not engaging in or exposed to harmful contact unless a staff member is standing there watching every minute of the … visit," which would place a substantial burden on KDOC's limited resources.  (Doc. 36 at 27.)

      The connection between the policy and the protection of children is rational given the circumstances cited by Defendants, which include Plaintiff's current diagnosis, a non-trivial

11

chance of his recidivism, his history of engaging in sexual abuse of minors over a period of years, and the fact it is not feasible for video visitations to be constantly monitored by corrections staff.[5] Because the uncontrolled nature of video visits at HCF means a potential exists that an inmate will have interaction with a minor during a video visitation – despite an approved adult being the listed contact – and because Defendants had a reasonable basis for concluding there was a risk of Plaintiff engaging in inappropriate conduct with a minor in the event of unsupervised contact, the policy rationally furthers the state's interest in protecting children. The rational connection is illustrated by *Holloway v. Clarke*, No. 3:20CV109-HEH, 2021 WL 5760853, at *3 (E.D. Va. Dec. 3, 2021), where the court upheld a limitation on at-home video visitations that required an inmate's family members to travel to an approved site where video visitations could be monitored. The court found that the prohibition on at-home video visitations –

> promotes the rational penological objectives of rehabilitation and security. Specifically, because of their specific criminal history, sex offenders are more likely to take advantage of unrestricted at-home video visitation to engage in sexual conduct. Therefore, the regulation here requires Holloway's family who wish to take advantage of the program to travel to an approved … visitation center, where the risk of inappropriate sexual conduct is significantly decreased.

*Id.* Because there is a rational connection between the KDOC policy and its legitimate interest in protecting children, the first factor weighs in favor of a finding that the restriction is reasonable.

2. <u>Whether alternative means of exercising the right are available notwithstanding the policy or regulation</u>. The uncontroverted facts show Plaintiff has the option of communicating with the adults on his contact list through in-person visitations, mail, email, and telephone. He thus clearly has alternative means to communicate with these persons. While these alternatives

---

[5] Plaintiff argues the visits are not uncontrolled because inmates are only allowed visits with those on their approved list, and violating this rule is grounds for termination of visits and discipline. (Doc. 45 at 23.) But absent contemporaneous and constant monitoring of video visitations, corrections officials have no way of ensuring that minors are not exposed to harm from video calls. Plaintiff's suggestion would limit correction officials to taking action to limit video access after harm to a minor has already occurred and been detected.

might not be as convenient or fulfilling as video visitation, the fact is they are sufficient to permit Plaintiff to communicate with these individuals. *Cf. Overton v. Bazzetta*, 539 U.S. 126, 135 (2003) ("Alternatives to visitation need not be ideal, however; they need only be available. Here, the alternatives are of sufficient utility that they give some support to the regulations….") Plaintiff argues the option of telephone communication is inadequate with respect to his grandmother, whom he says has Alzheimer's Disease, is in a nursing home, lacks the ability to write, and lacks the hand strength to hold or operate a phone. (Doc. 4 at 19-10.) But Plaintiff indicates his grandmother likewise needs assistance to participate in a video visit, and a similar level of assistance ought to suffice for a telephone call, such that use of a telephone is an equally feasible alternative to video visitation. (*See* Doc. 4 at 20.) The second factor thus weighs in favor of a finding that Defendants' restriction is reasonable.

    3. <u>What effect accommodating the exercise of the right would have on guards, other prisoners, and prison resources generally</u>. As indicated by Defendants, the only apparent accommodation that would ensure that minors would not be exposed to possible harm from allowing offenders such as Plaintiff to engage in video visitation would be to have a guard constantly monitor each video call by each inmate. McDonald's affidavit shows – and in fact it is obvious – that such an arrangement would amount to a significant administrative burden that would be institutionally detrimental given KDOC's limited resources. (Doc. 36 at 27.) *Cf. Tenison v. Byrd,* 826 F. App'x 682, 692 (10th Cir. 2020) ("allowing Tenison to pray in the dayroom would necessarily involve the attention of correctional officers, and any resources allocated to oversee Tenison's prayers would be unavailable for other purposes."); *Turner*, 482 U.S. at 90 ("When accommodation of an asserted right will have a significant ripple effect on fellow inmates

or on prison staff, courts should be particularly deferential to the informed discretion of corrections officials.")  The third factor weighs in favor of a finding that the restriction is reasonable.

    4. <u>Whether ready, easy-to-implement alternatives exist that would accommodate the prisoner's rights</u>.  Plaintiff contends there are three "easy alternatives" to the prohibition on video visits, the first of which is that he could be granted an exception to the policy and allowed to have video visits with the adults on his contact list.  (Doc. 4 at 23.)  He argues a second alternative is to allow all sex offenders affected by the restriction immediate access to the SOTP.  (*Id.* at 24.)  His third suggested alternative is that KDOC retracts the policy and only applies the restriction to applications for visits with minors.  (*Id.* at 25.)  None of these suggestions presents an easy alternative that ensures protection of minors.  As already discussed, the KDOC has no control over access to the recipient's side of an inmate's video communication, and as such it has no ability to prevent harm to minors from occurring, whether it results from inadvertence or purposeful abuse of a video visitation.  (*See* McDonald affidavit, Doc. 9-2 at 2) ("I cannot control who is on the video visit or if the victims would happen to be present at the time of the call.") Plaintiff has failed to show there are any viable and easy-to-implement alternatives to the current policy that would accommodate his First Amendment rights.  *See Overton*, 539 U.S. at 132 ("[t]he burden, moreover, is not on the State to prove the validity of prison regulations but on the prisoner to disprove it.") (citation omitted). This factor, like the others, favors a finding that the restriction on Plaintiff's use of video visitations is reasonable.  *Cf. Turner*, 482 U.S. at 90 ("the absence of ready alternatives is evidence of the reasonableness of a prison regulation….")

    Under the *Turner* factors and the uncontroverted facts, the restriction on Plaintiff's use of video visitations is reasonably related to legitimate penological justifications.  Defendants are

therefore entitled to summary judgment insofar as Plaintiff claims Defendants have deprived him of First Amendment and other rights through application of a policy without such justification.

### VII. Equal Protection Claim

Plaintiff's second claim is that Defendants' restriction on his ability to have video visitation violates his right to equal protection of the laws. This claim is not clearly articulated in the complaint. Plaintiff alleges that Defendants have allowed "prisoners in similar situations, with the same classification and management needs[,] to have visits via video…." (Doc. 4 at 9-10.) The claim appears to be based in part on complaints that the terms of IMPP 11-115A do not actually apply to adult contact lists and visits,[6] and also that Defendants have unfairly denied his override request on the basis that he has not completed SOTP when he is not yet eligible to take it, while other inmates with similar convictions "will be allowed to complete SOTP or otherwise be granted override or exceptions" for video visitations. (*Id.* at 10; *see also id*. at 27.)

"Equal protection is essentially a direction that all persons similarly situated should be treated alike." *Fogle v. Pierson*, 435 F.3d 1252, 1260 (10th Cir. 2006) (citation omitted.) In order to succeed on such a claim, Plaintiff would have to show that he was similarly situated to other inmates who were treated differently and that the difference in treatment was not reasonably related to legitimate penological interests. *Id.* at 1261.

Plaintiff's complaint fails to plausibly allege that he was treated differently from other inmates who were similarly situated. Plaintiff's complaint alleges in conclusory fashion that he was similarly situated to other inmates seeking overrides without providing factual support for that assertion. In *Templeman v. Gunter,* 16 F.3d 367, 371 (10th Cir. 1994), the Tenth Circuit found it

---

[6] To the extent Plaintiff complains that Defendants did not correctly apply or follow KDOC's policies, such allegations fail to state any claim for deprivation of federal constitutional rights. *See e.g., Gaines v. Stenseng*, 292 F.3d 1222, 1225 (10th Cir. 2002) (allegation of failure to follow state prison regulation did not state claim under 42 U.S.C. § 1983).

15

was "'clearly baseless' to claim that there are other inmates who are similar in every respect" when prison administrators had discretion to consider all of an inmate's circumstances in making classification decisions. *See also Fogle*, 435 F.3d at 1261 ("it is not plausible that 'there are no relevant differences between [plaintiff] and other inmates that reasonably might account for their different treatment.'") Given all of the factors the Override Panel can consider in determining whether to grant an override, Plaintiff's conclusory allegation that the panel has granted overrides (or might grant overrides in the future – the complaint is not clear) to "similarly situated" inmates "with similar convictions" fails to plausibly state a claim for relief. Moreover, Plaintiff makes no argument or showing that he could cure this deficiency by amendment, and the court concludes that any such amendment would be futile. *Cf. Jones v. N. Carolina Prisoners' Lab. Union, Inc.*, 433 U.S. 119, 136 (1977) ("It is precisely in matters such as this, the decision as to which of many groups should be allowed to operate within the prison walls, where, confronted with claims based on the Equal Protection Clause, the courts should allow the prison administrators the full latitude of discretion, unless it can be firmly stated that the two groups are so similar that discretion has been abused.") Accordingly, the court grants Defendants' motion to dismiss the equal protection claim for failure to state a claim upon which relief can be granted. In view of this finding, the court need not address the other arguments raised by Defendants in their motion.

**VIII. Conclusion**

Plaintiff's motion for order (Doc. 48) is GRANTED. Defendants' motion to dismiss or in the alternative for summary judgment (Doc. 35) is GRANTED. Summary judgment is granted in favor of Defendants on Plaintiff first claim, and Plaintiff's second claim is dismissed for failure to

16

state a claim upon which relief can be granted. The Clerk is directed to enter judgment accordingly. IT IS SO ORDERED this 8th day of March, 2022.

_____s/ John W. Broomes_____
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE